IRVING, J.,
Concurring in Part, Dissenting in Part:
¶ 32. I agree with the court’s resolution of issues two and three. However, I disagree with its resolution of issue one. Therefore, I dissent from that portion of the majority opinion which finds that Bat-son was not violated when the State struck prospective African American jurors who had relatives that were convicted felons but did not strike prospective Caucasian jurors who also had relatives that were convicted felons. I believe that the reasons given by the State for the disparate treatment was clearly pretextual and that the trial court abused its discretion in allowing the State to strike the African American jurors while keeping Caucasian jurors who were similarly situated. Therefore, I respectfully dissent on this issue.
¶ 33. The venire was composed of four African Americans. The State struck all of them. Juror number three was struck because defense counsel had represented her daughter a year earlier. Jurors numbers six, sixteen, and twenty-one allegedly were struck because they had either a Mend or family member who was either a convicted felon or had charges pending, yet the State did not strike jurors numbers twenty, twenty-five and twenty-seven, all Caucasians, who also had a friend or family member that had been convicted of a felon. In explaining why he did not strike one of the Caucasian jurors, juror number twenty, the prosecutor explained:
Judge, I did allow 20 on there. The reason I allowed 20 on there is because again — obviously, the record doesn’t reflect it, but I don’t live in Waynesboro, I live in Meridian. And I rely to a large extent on the narcotics officers and law *161 enforcement to tell me about what they know about individual people. And I was told that Mr. Trigg would be a good juror for us in spite of his relative’s problems.
¶ 34. Earlier in the voir dire, in response to a question as to whether anyone on the venire panel had been convicted of a felony in the past or had a close friend or family member who had been convicted, the following exchanged occurred:
(By the prosecutor) Raise your cards and I will get to you one by one. Okay. Juror number 20, Mr. Trigg. Was that here in Waynesboro?
A. Yes.
Q. About how long ago?
A. Two and a half years.
Q. Do you remember the kind of crime?
A. I do. I would rather not say.
Q. Okay. Was it a drug crime?
A. No.
Q. It was some other kind of crime?
A. Yes.
Q. Do you feel that person was treated unfairly in any way by law enforcement or the prosecutors?
A. No.
Q. Do you have any hard feelings about it or feel it would affect you because our office prosecuted that person?
A. No.
¶ 35. Jurors numbers twenty-one and twenty-four, two African American females responded to the same series of questions as did Juror Trigg. In the case of juror twenty-one, she said that the friend or family member had been convicted of a third offense of DUI. Juror twenty-four said that the friend or family member had been convicted of a burglary. Both jurors testified as did Juror Trigg that they did not think the relative or friend had been treated unfairly by the prosecution, that they harbored no hard feelings toward the prosecution, and that they would not be affected by the fact that their relative or friend had been prosecuted.
¶ 36. In addition to keeping Juror Trigg, a Caucasian male, the State also kept jurors numbers twenty-five and twenty-seven, both Caucasian females. In the ease of juror number twenty-five, the friend or family member had been convicted of burglary, but in the case of juror number twenty-seven, the friend or family member had been convicted of a drug crime. Jurors numbers twenty-five and twenty-seven served as alternates.
¶ 37. It is true, as the majority points out, that Chambers did not object to jurors numbers twenty-five and twenty-seven and that neither of these jurors actually served on the jury. However, that observation misses the point. The importance of these jurors lies not in the fact that no objection was made to their serving nor in the fact that they did not serve, but in the fact that the State accepted them but rejected African Americans who were similarly situated. Perhaps, the defense wanted these jurors as well. That the defense also may have wanted these jurors and therefore did not object to the State’s keeping them did not vitiate the fact that the State was accepting Caucasian jurors who were in the same posture as the African American jurors that it was rejecting. This demonstrated that the State’s strikes were indeed pretextual. Moreover, when these two jurors were accepted, the trial court had already ruled earlier that a prima facie case had been established that the State was using its peremptory challenges in violation of Batson.
¶ 38. The majority also observes that neither of the Caucasian alternates had family members who had pending charges *162 or were presently involved in the drug business. The inference here is that all the African American jurors who were struck had family members with pending drug charges or were presently involved in the drug business. The record does not support this inference. First, there were only two African American jurors, jurors numbers six .and sixteen, who allegedly had a friend or family member with pending drug charges. Jurors numbers twenty-one and twenty-four were in the exact same posture as were jurors numbers twenty, twenty-five, and twenty-seven.
¶ 39. To find that the State’s peremptory strikes of jurors numbers twenty-one and twenty-four were not pretextual is to find that it is acceptable to discriminate on the basis of race between two sets of jurors, one African American and the other Caucasian, as long as law enforcement vouches for the fairness of the Caucasian set. I do not believe Batson permits such result. Therefore, I respectfully dissent.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.